IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ROLEX WATCH U.S.A., INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-00061-L** |
| | § | |
| **JAMES WARREN MILLS,** *et al.* | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER AND PERMANENT INJUNCTION

Before the court is Plaintiff's Motion for Entry of a Final Default Judgment and Permanent Injunction by Default Against Defendants ("Motion"), filed May 29, 2012. After consideration of the motion, brief, record, and applicable law, the court **grants** Plaintiff's Motion for Entry of a Final Default Judgment and Permanent Injunction by Default Against Defendants.

**I.   Background**

Rolex Watch U.S.A., Inc. ("Plaintiff" or "Rolex") filed this action on January 6, 2012, against James Warren Mills and Sandra Mills, individually and doing business as www.worldwiderolex.com, Unknown Websites 1-10, Unknown Entities 1-10, and John Does 1-10 (collectively, "Doe Defendants"). In its Motion, Rolex seeks default judgment against James Warren Mills and Sandra Mills, individually and doing business as www.worldwiderolex.com (collectively, "Defendants").

Rolex owns numerous trademarks, including, but not limited to, the trademarks and trade names ROLEX, PRESIDENT, CROWN DEVICE (design), DATEJUST, GMT-MASTER, DAY-DATE, OYSTER, OYSTER PERPETUAL, YACHT-MASTER, SUBMARINER, ROLEX

DAYTONA and DAYTONA on and in connection with watches, watch bracelets and related products ("Rolex Registered Trademarks"). Rolex is responsible for assembling, finishing, marketing and selling in interstate commerce high-quality Rolex watches, watch bracelets and related products for men and women. Rolex is the exclusive distributor and warrantor in the United States of Rolex watches, all of which bear one or more of the Rolex Registered Trademarks. Rolex watches are identified by the trade name and trademark ROLEX and one or more of the Rolex Registered Trademarks. Rolex has used the Rolex Registered Trademarks in the United States and in interstate commerce for many years.

In July 2011, Rolex discovered the Infringing Domain, which did not contain any content other than stating it was the "future home of something quite cool." Compl. 4-5, ¶ 23. Rolex contends that the Infringing Domain contains an unauthorized use of the Rolex trademark, and creates the false and misleading appearance that the domain and website are endorsed and authorized by Rolex. Rolex alleges that the Infringing Domain was created on July 1, 2011, and is registered to Defendants, who are in the business of buying and selling domains and currently own approximately 296 domains, many of which contain trademarked terms. In response to Rolex's cease and desist requests, Defendants would not agree to transfer the Infringing Domain to Rolex but offered to sell it in exchange for a "Rolex President" watch, which retails for between $24,600 and $132,350. In April 2012, four months after Rolex filed this action, Defendants replaced the Infringing Domain with an active website named "The World Wide Cat Mr. Rolex." Pl.'s App. 13, ¶ 19.

Rolex alleges that its Registered Trademarks are entitled to protection under the federal trademark laws and under the laws of the State of Texas, and that Defendants intentionally,

maliciously and willfully registered, own and maintain a domain, www.worldwiderolex.com (the "Infringing Domain"), which improperly contains a Rolex Registered Trademark, despite knowledge that such actions are unauthorized.

Rolex amended its pleadings on January 14, 2012 ("Amended Complaint"), and served Defendants with a summons and the Amended Complaint on January 26, 2012, and January 27, 2012 (Doc. 10-11). To date Defendants have not filed an answer to the Rolex's Amended Complaint or otherwise defended in this lawsuit. Rolex requested the clerk to issue entry of default on March 15, 2012, and default was entered by the clerk on same day. Rolex now requests entry of default judgment against Defendants for statutory damages and a permanent injunction.[1] Rolex further requests reasonable attorney's fees and costs.

## II. Analysis

The court finds that because Defendants have neither filed an answer to Plaintiff's Amended Complaint nor otherwise defended in this lawsuit, and because Defendants are not infants, incompetent, or in the military, Pl.'s App. 10, ¶ 2, Rolex is entitled to judgment against Defendants. The court, therefore, accepts as true the well-pleaded allegations stated by Rolex in its Amended Complaint and the facts set forth in the evidence in support of Plaintiff's Motion.

### A. Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *See United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citing *TWA v. Hughes*, 449 F.2d 51, 70 (2nd Cir. 1971)), *rev'd on other grounds*, 409 U.S. 363 (1973); *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29,

---

[1] Rolex dismissed without prejudice the Doe Defendants on November 26, 2012.

**Memorandum Opinion and Order and Permanent Injunction – Page 3**

34 (1st Cir. 1980)). In its Motion, Rolex asks the court to award $100,000 in statutory damages pursuant to 15 U.S.C. § 1117 for cyberpiracy in violation of 15 U.S.C. § 1125(d)(1)(A).[2] In a case involving a violation of section 1125(d)(1), section 1117(d) permits the plaintiff "to elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." § 1117(d). Section 1125(d)(1)(A) provides:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
> > (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> >
> > (ii) registers, traffics in, or uses a domain name that
> >
> > > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> > >
> > > (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> > >
> > > (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A). In determining whether a person has a bad faith intent, the court considers:

> factors such as, but not limited to

---

[2] Rolex also asserted a claim for trademark infringement pursuant to 15 U.S.C. § 1114; however, the facts alleged in its Complaint and the evidence submitted in support of its Motion are limited to the cyberpiracy claim and do not contain facts regarding Defendants' use of the Rolex mark in connection with the sale, distribution, or advertising of any goods or services. *See* 15 U.S.C. § 1114. Accordingly, the court considers only Rolex's cyberpiracy claim under section 1125(d)(1)(A) for purposes of ruling on its Motion.

**Memorandum Opinion and Order and Permanent Injunction – Page 4**

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). The court determines, based on Rolex's pleadings and the evidence submitted in support of its Motion, that Defendants registered the Infringing Domain, which contains Rolex's distinctive mark, and offered to transfer or sell the Infringing Domain name to Rolex for

financial gain without having used, or having an intent to use the domain name in the bona fide offering of any goods or services. 15 U.S.C. § 1125(d)(1)(B)(i)(VI). Defendants are therefore liable for cyberpiracy in violation of section 1125(d)(1). Rolex's evidence that Defendants are in the business of buying and selling domains and currently own approximately 296 domains, many of which contain trademarked terms, also establishes a pattern of such conduct. *Id*. The court therefore concludes that Defendants acted with a bad faith intent in registering and using the Infringing Domain.

The amount of statutory damages requested by Rolex falls within the amount allowed by statute, and the court finds the amount of $100,000 in damages is reasonable given that the Infringing Domain operated for at least nine months, Defendants refused to cease and desist use of the Infringing Domain after notification and this lawsuit was filed, and Defendants sought financial gain in the form of a "Rolex President" watch, which retails for between $24,600 and $132,350. Further, when Rolex refused to succumb to Defendants' demand, they mocked Rolex and flaunted their continued used of the Rolex mark by replacing the Infringing Domain with an active website named "The World Wide Cat Mr. Rolex." Accordingly, Rolex is entitled to a total amount of **$100,000** in statutory damages.

### B. Permanent Injunction

Rolex further requests that the court permanently enjoin Defendants from use of its Rolex mark in violation of section 1125(d)(1). Section 1116 permits courts to grant injunctive relief:

> according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of

such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.

15 U.S.C. § 1116(a). Additionally, Rolex requests that Defendants be ordered to transfer the domain name to Rolex pursuant to section 1125(d)(1)(C), which provides: "In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." After a careful review of the evidence and authority, the court determines that permanent injunctive relief and transfer of the Infringing Domain is appropriate.

Accordingly, pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendants, Defendants' officers, agents, servants, employees, and attorneys and those persons in active concert or participation with Defendants are forever **enjoined** from operating, registering, maintaining, or controlling any domain names that include the ROLEX trademark or any other Rolex Registered Trademarks in violation of 15 U.S.C. § 1125(d). Further, Defendants **shall transfer** to Rolex the Infringing Domain Name and any domain registered by or owned by Defendants that contain Rolex or any Rolex Registered Trademarks. Within **thirty days (30)** after the service on the Defendants of this injunction, Defendants shall **file** with the court a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction. Failure by Defendants to comply with this injunction and these requirements will subject them to sanctions.

### C. Costs and Attorney's Fees

Rolex requests $22,727 for attorney's fees and $625.46 in costs from Defendants. Section 1117(a) of the statute permits the court to award attorney's fees in "exceptional cases." 15 U.S.C. § 1117(a). Rolex asserts that this is an exceptional case warranting attorney's fees because

Defendants acted in bad faith and willfully in registering the Infringing Domain that contains the Rolex trademark. Rolex further asserts that costs are generally awarded in Lanham Act cases for taxable costs, including filing fees, photocopying, long distance telephone calls, service of process, and regular and express mail, if such costs are necessary for the representation of the client. In support of its request for costs, Rolex cites *Protection One Alarm Monitoring, Inc. v. Executive Protection Once Security Service, L.L.C.*, 553 F. Supp. 2d 201 (E.D.N.Y. 2008).

Regarding the award of attorney's fees, "The prevailing party has the burden to demonstrate the exceptional nature of the case by clear and convincing evidence. An exceptional case involves acts that can be called 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *Schlotzsky's, Ltd. v. Sterling Purchasing and Nat'l Distrib. Co., Inc.*, 520 F.3d 393, 402 (5th Cir. 2008) (citations omitted). The court has already held that Defendants acted with a bad faith intent and therefore concludes that this is an exceptional case warranting attorney's fees. The statute at issue does not provide for an award of court costs; however, Rolex may file a bill of costs in accordance with Rule 54 of the Federal Rules of Civil Procedure.

In support of its request for $22,727 in attorney's fees, Rolex presented the declaration of its counsel, Steven M. Abbott ("Abbott"). The court must determine whether the requested amount is reasonable. The record reflects that Abbott has been licensed by the State of Texas for 25 years. His practice primarily consists of handling cases involving commercial litigation, particularly in the area of trademark rights such as those involved in this case. His hourly rate is $250 per hour. The court finds that this hourly rate is within the range of the usual and customary rate charged by attorneys in the Dallas legal community with similar ability, competence, experience, and skill as that of Plaintiff's counsel for the services performed in cases of this nature. Accordingly, the court finds

that the hourly rate of $250 is reasonable. Rolex has produced evidence that Abbott expended 52.21 hours for successfully prosecuting this case and obtaining a default judgment for a total of $13,052.50 in attorney's fees.

Rolex also submitted the declaration of Walter-Michael Lee ("Lee"), who is an active member of the New York state bar and senior counsel with the law firm Gibney, Anthony & Glaherty LLP. Lee's practice primarily consists of handling cases involving intellectual property litigation. Lee's hourly rate is $300 per hour. Lee was also assisted by two paralegals at the rates of $80 and $195 per hour. Lees states that these rates are in line with rates commonly charged and are reasonable for experienced paralegals and lawyers specializing in intellectual property litigation and comparable to rates commonly charged in the Northern District of Texas.

The court finds that the hourly rates of $300 and $80 are within the range of the usual and customary rate charged by paralegals and attorneys in the Dallas legal community with similar ability, competence, experience, and skill as that of Plaintiff's counsel and paralegals for the services performed in cases of this nature. Accordingly, the court finds that the hourly rates of $300 and $85 are reasonable; however, the $195 hourly rate charged for paralegal Tina Ferraioli ("Ferraioli") exceeds the average billing rate for paralegals in Texas, which in the last two years has ranged from $60 to $125. *See Coach Inc. v. Couture*, No. SA-10-CV-601-XR, 2012 WL 3249470, at *2, n.1 (W.D. Tex. Aug. 7, 2012) (compiling cases). Moreover, no evidence was provided regarding Ferraioli's experience and the work performed by her in preparing and scanning exhibits, drafting a certificate of good standing, and reviewing the case docket is primarily administrative in nature and not the type of work that requires a high level of skill. *See Richardson v. Tex-Tube Co.*, 843 F. Supp. 2d 699, 709 (S.D. Tex. 2012); Pl.'s App. 17. The court therefore determines that a reduction of

Ferraioli's hourly fee is appropriate and will adjust her hourly rate to $125 per hour. *Id.* Rolex has produced evidence that Lee expended 21.7 hours for a total of $6,510 in attorney's fees; Ferraioli expended 1.5 hours for a total of $187.50 in paralegal fees; and Meredith Ward ("Ward") expended 10.9 hours for a total of $872 in paralegal fees. Together, Lee, Ferraioli, and Ward expended $7,569.50 in attorney's and paralegal's fees in obtaining a default judgment and successfully prosecuting this case.

The court finds that the number of hours expended by Abbott, Lee, Ferraioli, and Ward were reasonable and necessary for the successful prosecution of this action. Accordingly, the court determines that Rolex is entitled to an award of attorney's fees and paralegal fees in the amount of **$20,622.**

### III.   Conclusion

For the reasons herein stated, the court **grants** Plaintiff's Motion for Entry of a Final Default Judgment and Permanent Injunction by Default Against Defendants. Accordingly, the court will enter a default judgment in favor of Rolex in the amount of **$100,000**, plus postjudgment interest thereon at the applicable federal rate of **.19%**. Rolex requested no prejudgment interest, and the court awards none. The court **permanently enjoins** Defendants, Defendants' officers, agents, servants, employees, and attorneys and those persons in active concert or participation with Defendants from operating, registering, maintaining, or controlling any domain names that include the ROLEX trademark or any other Rolex Registered Trademarks in violation of 15 U.S.C. § 1125(d). Rolex's trademarks in violation of 15 U.S.C. § 1125(d). Further, Defendants **shall transfer** to Rolex the Infringing Domain Name and any domain registered by or owned by Defendants that contain Rolex or any Rolex Registered Trademarks. Within **thirty days (30)** after the service on the

Defendants of this injunction, Defendants shall **file** with the court a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction. Failure by Defendants to comply with this injunction and these requirements will subject them to sanctions. The court also **awards** Rolex reasonable attorney's fees and paralegal fees in the amount of **$20,622** and taxes all allowable and reasonable costs against Defendant.[3] The court reserves and retains jurisdiction over the subject matter of this case for purposes of enforcing the Default Judgment and injunction. In accordance with Rule 58 of the Federal Rules of Civil Procedure, a default judgment will issue by separate document.

**It is so ordered** this 26th day of November, 2012.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge

---

[3] As explained herein, the statute at issue does not provide for an award of court costs; however, Rolex may file a bill of costs in accordance with Rule 54 of the Federal Rules of Civil Procedure.

**Memorandum Opinion and Order and Permanent Injunction – Page 11**